UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA MCGEE BURTON, individually and as heir and successor in interest to Willie James McGee, deceased,<br><br>  Plaintiff,<br><br>v.<br><br>SILVERADO ESCONDIDO, LLC, doing business as Silverado Memory Care; and DOES 1-50,<br><br>  Defendants. | Case No.: 21-cv-1213-WQH-RBB<br><br>**ORDER** |

HAYES, Judge:

The matters before the Court are the Motion to Dismiss filed by Defendant Silverado Escondido, LLC (ECF No. 5) and the Motion to Remand to State Court filed by Plaintiff Cynthia McGee Burton (ECF No. 8).

## I.   BACKGROUND

On June 1, 2021, Plaintiff Cynthia McGee Burton, individually and as successor in interest to decedent Willie James McGee, filed a Complaint against Defendants Silverado

1

Escondido, LLC, doing business as Silverado Memory Care ("Silverado"), and Does 1-50 in the San Diego County Superior Court. (ECF No. 1-2). Plaintiff brings claims against Defendants under California state law, arising from Defendants' alleged "neglect and deliberate disregard for the health and safety" of decedent McGee. (*Id.* ¶ 1).

On July 2, 2021, Defendant Silverado removed the action to this Court pursuant to 42 U.S.C. § 1441 based on federal question jurisdiction under 28 U.S.C. § 1331 and pursuant to the federal officer removal statute, 28 U.S.C. § 1442. (ECF No. 1). Silverado asserts that removal based on federal question jurisdiction was proper because Plaintiff's claims are completely preempted by the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C. §§ 247d-6d, 247d-6e, and the Complaint necessarily raises a substantial federal question under the PREP Act. Silverado asserts that removal based on federal officer jurisdiction was proper because Silverado is "sued for acts undertaken at the direction of a federal officer." (*Id.* ¶ 55).

On July 9, 2021, Silverado filed a Motion to Dismiss "pursuant to Fed. R. Civ. P. 12(b)(6) and/or 12(b)(1) on the grounds that it is immune from Plaintiff's suit" under the PREP Act. (ECF No. 5 at 2).

On July 30, 2021, Plaintiff filed an Opposition to Silverado's Motion to Dismiss and Motion to Remand to State Court. (ECF No. 8).

On August 9, 2021, Silverado filed a Reply in support of its Motion to Dismiss. On August 24, 2021, Silverado filed an Opposition to the Motion to Remand. (ECF No. 10). Plaintiff did not file any Reply in support of the Motion to Remand.

On October 14, 2021, the Court heard oral argument on the Motion to Remand. (ECF No. 12).

## II.  ALLEGATIONS IN THE COMPLAINT

Plaintiff Cynthia McGee Burton is the daughter and successor in interest of decedent Willie James McGee. Decedent McGee was "an 84-year-old male with a . . . long time diagnosis of Dementia, Cortical Blindness, History of Chronic Urinary Tract Infection and presence of Suprapubic Catheter." (ECF No. 1-2 ¶ 18). McGee's physical and mental

limitations "restricted his ability to carry out normal activities of daily living" and made him "extremely susceptible to contracting airborne ailments." (*Id.* ¶¶ 10, 18). McGee was dependent on others to meet his basic needs, including feeding and dietary planning, hydration, hygiene and skin care, toileting, safety and medical care, and infection control and prevention. McGee "required close supervision, close monitoring, and medical attention to ensure his health, safety and well-being." (*Id.* ¶ 17).

Defendant Silverado is a twenty-four-hour skilled nursing facility in Escondido, California. On September 19, 2019, McGee was admitted to Silverado "for long term memory care related to his diagnosis of dementia." (*Id.* ¶ 19). Silverado was aware of McGee's compromised physical and mental state and of its obligation to follow state and federal law. Despite this knowledge, Silverado "denied and withheld the services and supervision necessary to meet Mr. McGee's basic needs." (*Id.* ¶ 1).

On September 22, 2019, McGee "suffered a fall with no apparent injury." (*Id.* ¶ 18). On March 3, 2020, McGee "suffered another fall with a closed head injury." (*Id.*). On March 4, 2020, Governor Newsom proclaimed a State of Emergency in California as a result of the threat of COVID-19. Silverado was "on notice of an infectious disease that could cause acute respiratory distress" and of "its obligations to create and implement an infection control policy." (*Id.* ¶ 2). Silverado failed to establish and implement proper infection control policies, which led to an outbreak of COVID-19. Specifically, Silverado failed to train staff on effective infection control mechanisms; enforce social distancing; cancel group activities and communal dining; restrict visitors; ensure adequate staffing levels; screen volunteers and non-essential healthcare personnel; provide residents with personal protective equipment ("PPE"); ensure that staff and residents were properly using PPE; provide necessary care; or monitor local, state, and federal health guidance. Silverado further failed to monitor McGee's condition to prevent avoidable falls and accidents, develop and implement a reasonable care plan, ensure that McGee received necessary fluids for proper functioning of his urinary tract, or maintain adequate personnel to ensure a minimum of three nursing hours per patient per day.

On June 1, 2020, McGee "started displaying symptoms of COVID-19." (*Id.* ¶ 20). McGee was sent to Kaiser Foundation Hospital, where he was diagnosed with COVID-19 and an acute kidney injury. McGee "died from COVID-19 on June 8, 2020." (*Id.*).

Plaintiff brings the following claims against Defendants: (1) violation of the California Elder Abuse and Dependent Adult Civil Protection Act; (2) negligence; (3) wrongful death; and (4) willful misconduct. Plaintiff seeks damages, including punitive damages, and attorneys' fees and costs.

## III. THE PREP ACT

The PREP Act gives the Secretary of Health and Human Services ("Secretary") authority to "determine[] that a disease or other health condition or other threat to health constitutes a public health emergency" and to make a declaration recommending "the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures." 42 U.S.C. § 247d-6d(b)(1). If the Secretary makes such a declaration, the PREP Act provides immunity from suit and liability for "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." *Id.* § 247d-6d(a)(1); *see id.* § 247d-6d(a)(2)(b) ("The immunity under paragraph (1) applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure . . . .").

The PREP Act specifies four types of covered countermeasures: (1) a qualified "pandemic or epidemic product," which includes a drug, biological product, or device that is approved, licensed, or authorized for emergency use in accordance with the Federal Food, Drug, and Cosmetic Act ("FDCA") and is used "to diagnose, mitigate, prevent, treat, or cure a pandemic or epidemic" or used "to limit the harm such pandemic or epidemic might otherwise cause," *id.* § 247d-6d(i)(1)(A), (i)(7); (2) a "security countermeasure," which refers to a drug, biological product, or device used "to diagnose, mitigate, prevent, or treat harm from any biological, chemical, radiological, or nuclear agent" identified by the Secretary of Homeland Security as a material threat to national security or authorized

for emergency use in accordance with the FDCA, *id.* 247d-6d(i)(1)(B), 42 U.S.C. § 247d-6b(c)(1)(B); (3) a drug, biological product, or device that the United States Food and Drug Administration ("FDA") has authorized for emergency use under the FDCA, 42 U.S.C. § 247d-6d(i)(1)(C); and (4) a "respiratory protective device" that is approved by the National Institute for Occupational Safety and Health ("NIOSH"), *id.* § 247d-6d(i)(1)(D). The FDA has issued several Emergency Use Authorizations ("EUAs") in response to the COVID-19 pandemic, including EUAs for certain vaccines, drugs and therapeutics, blood purification devices, COVID-19 tests, antibody tests, face masks, face shields, respirators, and gowns and other apparel worn by healthcare providers. (*See generally* ECF No. 4-10).

A person who suffers a covered injury under the PREP Act may bring a claim for compensation from the Covered Countermeasure Process Fund ("Process Fund"), which is administered by the Secretary. 42 U.S.C. § 247d-6e(a). Compensation through the Process Fund "shall be exclusive of any other civil action or proceeding for any claim or suit this section encompasses." *Id.* § 247d-6e(d)(4). The "sole exception to the immunity from suit and liability" is when "death or serious physical injury [is] proximately caused by willful misconduct." *Id.* § 247d-6d(d)(1). In cases of willful misconduct, the PREP Act provides for an "exclusive Federal cause of action," which "shall be filed and maintained only in the United States District Court for the District of Columbia" after exhaustion of administrative remedies. *Id.* § 247d-6d(d)(1), (e)(1); *see id.* § 247d-6e(d)(5) (if the Secretary determines that an individual alleging willful misconduct qualifies for compensation under the Process Fund, "the individual has an election to accept the compensation or to bring an action under [42 U.S.C. § 247d-6d(d)]. If such individual elects to accept the compensation, the individual may not bring such an action").

On March 10, 2020, the Secretary issued a Declaration declaring the COVID-19 pandemic a public health emergency under the PREP Act. (*See* ECF No. 4-2 at 5; 85 Fed. Reg. 15201). The Declaration states that "administration" of covered countermeasures under the PREP Act "means physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution and

dispensing of the countermeasures to recipients, management and operation of countermeasure programs, or management and operation of locations for purpose of distributing and dispensing countermeasures." (ECF No. 4-2 at 6; 85 Fed. Reg. 15202).

The Declaration has been amended nine times to date. On December 3, 2020, the Secretary issued a Fourth Amendment to the Declaration, which "make[s] explicit that there can be situations where not administering a covered countermeasure to a particular individual can fall within the PREP Act." (ECF No. 4-5 at 6; 85 Fed. Reg. 79194). The Fourth Amendment states:

> Where there are limited Covered Countermeasures, *not* administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute "relating to . . . the administration to . . . an individual" under 42 U.S.C. § 247d-6d. For example, consider a situation where there is only one dose of a COVID–19 vaccine, and a person in a vulnerable population and a person in a less vulnerable population both request it from a healthcare professional. In that situation, the healthcare professional administers the one dose to the person who is more vulnerable to COVID–19. In that circumstance, the failure to administer the COVID–19 vaccine to the person in a less-vulnerable population ''relat[es] to . . . the administration to'' the person in a vulnerable population. The person in the vulnerable population was able to receive the vaccine only because it was not administered to the person in the less-vulnerable population. Prioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections.

(ECF No. 4-5 at 9 (alterations in original); 85 Fed. Reg. 79197). The Fourth Amendment further states:

> This Declaration must be construed in accordance with the Advisory Opinions of the Office of the General Counsel (Advisory Opinions). I incorporate those Advisory Opinions as part of this Declaration.

(ECF No. 4-5 at 6-7; 85 Fed. Reg. 79194-95).

On January 8, 2021, the Office of the General Counsel ("OGC") issued an Advisory Opinion that states, in relevant part:

> Some district courts have interpreted the scope of the immunity in [the PREP

> Act] as requiring "use" [of a covered countermeasure]. Under this view, if a covered countermeasure were not used, then there is no PREP Act immunity.
> . . .
> However, this "black and white" view clashes with the plain language of the PREP Act, which extends immunity to anything "relating to" the administration of a covered countermeasure. . . . Prioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and th[e] Declaration's liability protections. There can potentially be other situations where a conscious decision not to use a covered countermeasure could relate to the administration of the countermeasure. In contrast, the failure to purchase any PPE, if not the outcome of some form of decision-making process may not be sufficient to trigger the PREP Act.

(ECF No. 4-9 at 3). The Advisory Opinion states that it "is not a final agency action or a final order" and "does not have the force or effect of law." (*Id.* at 6).[1]

## IV.  LEGAL STANDARD

"Under 28 U.S.C. § 1441, a defendant may remove an action filed in state court to federal court if the federal court would have original subject matter jurisdiction over the action." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1243 (9th Cir. 2009). District courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "To determine whether an action arises under federal law, a court applies the 'wellpleaded complaint rule.'" *Moore-Thomas*, 553 F.3d at 1243 (quoting *Toumajian v. Frailey*, 135 F.3d 648, 653 (9th Cir. 1998)).

---

[1] The Court grants Defendant Silverado's unopposed requests that the Court take judicial notice of the Declaration, several Amendments to the Declaration, several Advisory Opinions, a list of covered countermeasures subject to FDA Emergency Use Authorizations, and several memoranda and guidance documents issued by the CDC, CMS, and CDPH between January and April 2020, attached as Exhibits 2-30, 33, and 34 to the Notice of Removal. ECF No. 4; *see* Fed. R. Evid. 201(b)(2); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (the court may take judicial notice of "matters of public record"). The Court further grants Plaintiff's unopposed request that the Court take judicial notice of one Advisory Opinion, attached as Exhibit 3 to the Declaration of Dawn M. Smith. (ECF No. 8-1). The parties' additional requests for judicial notice are denied, because judicial notice of the requested documents is unnecessary for this Order. *See Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 n.12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary").

"Under this rule, a claim arises under federal law 'only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Id.* (quoting *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1075 (9th Cir. 2005)); *see also Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1056 (9th Cir. 2018) (it is "presume[d] that federal courts lack jurisdiction unless the contrary appears affirmatively from the record").

Under 28 U.S.C. § 1442, a civil action filed in state court may be removed to federal district court if the action was filed against or directed to "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). "Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).

"A motion to remand is the proper procedure for challenging removal." *Moore-Thomas*, 553 F.3d at 1244 (citing 28 U.S.C. § 1447(c)). There is a "strong presumption against removal" such that the removing party "always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Section 1441 "is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas*, 553 F.3d at 1244 (citing *Gaus*, 980 F.2d at 566). By contrast, § 1442 is "interpret[ed] [] broadly in favor of removal." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).

## V.     FEDERAL QUESTION JURISDICTION

Plaintiff asserts that removal based on federal question jurisdiction was improper because the PREP Act does not completely preempt Plaintiff's claims, and the Complaint does not necessarily raise a substantial federal question under the PREP Act. Plaintiff contends that the PREP Act does not apply because the claims in the Complaint are based on Defendants' neglect, failure to train and employ adequate staff, and failure to implement effective infection control policies, rather than the use or misuse "of any tangible drug, product, or device." (ECF No. 8 at 11). Plaintiff contends that most of the claims "have

nothing to do with PPE, COVID-19, or anything arising out of the pandemic whatsoever, given that Mr. McGee was grossly uncared for and was allowed to develop severe kidney injury and suffered debilitating falls." (*Id.* at 25). Plaintiff contends that the Complaint's claims of inaction do not fall within the scope of the PREP Act because there are no allegations that "any patient received a covered countermeasure to the exclusion of Mr. McGee" or that program planners made "a deliberate choice to allocate resources" in a way that deprived McGee of access to a covered countermeasure. (*Id.* at 25-26).

Defendant Silverado asserts that this action was properly removed based on federal question jurisdiction because the PREP Act completely preempts Plaintiff's claims, and the Complaint necessarily raises a substantial federal question under the PREP Act. Silverado contends that Plaintiff's claims fall within the scope of the PREP Act because the claims "by their very nature relate to the use of covered countermeasures including personal protective equipment ('PPE'), COVID-19 testing, and resident monitoring, and/or the management and operation of Defendant's countermeasures program." (ECF No. 10 at 9). Silverado contends that claims of inaction fall within the scope of the PREP Act, and Plaintiff's claims do "not involve nonfeasance or total inaction but instead relate[] to manner in which Defendant implemented countermeasures." (*Id.* at 25).

The well-pleaded complaint rule generally enables the plaintiff, as the "master of the claim," to "avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "[A] case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption . . . ." *Id.* at 393. Complete preemption is an exception to the well-pleaded complaint rule. *See City of Oakland v. BP PLC*, 969 F.3d 895, 905 (9th Cir. 2020). Complete preemption applies when "the pre-emptive force of the statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim.'" *Id.* (quoting *Caterpillar*, 482 U.S. at 393). "To have this effect, a federal statute must 'provide[] the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action.'" *Id.* (alteration in original) (quoting *Beneficial Nat'l Bank v. Anderson*,

539 U.S. 1, 8 (2003)). "[C]omplete preemption is rare." *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018). Complete preemption exists "when Congress: (1) intended to displace a state-law cause of action, and (2) provided a substitute cause of action." *BP PVL*, 969 F.3d at 905 (citing *Hansen*, 902 F.3d at 1057).

Further, the Supreme Court has recognized that "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). "[F]ederal jurisdiction over a state law claim will lie if a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

In this case, Plaintiff brings claims against Defendants for violation of the California Elder Abuse and Dependent Adult Civil Protection Act, negligence, wrongful death, and willful misconduct under California state law. In order for the PREP Act to completely preempt Plaintiff's state law claims, or for the Complaint to necessarily raise a federal issue under the PREP Act, the claims must fall within the scope of the PREP Act. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003) (explaining that a claim must "come within the scope" of the federal statute for complete preemption to apply). The PREP Act applies to "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1). The First Amendment to the Declaration states that "administration" of covered countermeasures "means physical provision of the countermeasures to recipients, or activities and decisions directly relating to . . . distribution and dispensing of the countermeasures to recipients[] [or] management and operation of countermeasure programs." (ECF No. 4-2 at 6; 85 Fed. Reg. 15202). Covered countermeasures include "drug[s]," "biological product[s]," and "device[s]" that meet specified criteria and regulatory standards. 42 U.S.C. § 247d-6d(i)(1). Covered countermeasures also include

"respiratory protective device[s]" approved by NIOSH and drugs, biological products, and devices authorized for emergency use by the FDA. *Id.*

The Complaint alleges that Defendants failed to properly care for decedent McGee and failed to take appropriate measures to protect the facility from the transmission of COVID-19. The Complaint alleges that Defendants' neglect caused McGee to suffer two falls, an acute kidney injury, and eventual death from COVID-19. The Complaint alleges that Defendants failed to train staff on effective infection control mechanisms; enforce social distancing; cancel group activities and communal dining; restrict visitors; ensure adequate staffing levels; screen volunteers and non-essential healthcare personnel; provide residents with PPE; ensure that staff and residents were properly using PPE; provide necessary care or develop and implement a reasonable care plan; monitor McGee's condition to prevent avoidable falls and accidents; ensure that McGee received necessary fluids for proper functioning of his urinary tract; or monitor local, state, and federal health guidance.

The claims in the Complaint are based in part on allegations that McGee died because Defendants failed to take preventative measures to stop the spread of COVID-19. Silverado has not identified any allegations in the Complaint of a causal relationship between Plaintiff's loss and the administration or use of a covered countermeasure. *See* 42 U.S.C. § 247d-6d(a)(2)(b) (PREP Act immunity "applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure . . . ."). Even assuming that the Complaint's general reference to "PPE" includes masks or other products that meet the criteria and regulatory standards to qualify as covered countermeasures under the PREP Act, the Complaint does not allege that McGee's death was caused by McGee's use of PPE, Defendants' physical provision of PPE to McGee, or Defendants' activities and decisions directly relating to management of a countermeasure program. The Complaint further does not allege that that Plaintiff's loss was caused by the prioritization or purposeful allocation of covered countermeasures or by any conscious decision not to use a covered countermeasure. The allegations that

Defendants failed to provide PPE or ensure the proper use of PPE are two of over twenty allegations of neglect in the Complaint, which alleges overall inattention rather than conscious decision-making about the use of covered countermeasures. It is not evident from the face of the Complaint that Plaintiff's claims fall within the scope of the PREP Act. *See Moore-Thomas*, 553 F.3d at 1243 ("[A] claim arises under federal law only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."). The Court concludes that Silverado has failed to meet its burden to establish that removal based on federal question jurisdiction was proper.[2]

## VI.   FEDERAL OFFICER JURISDICTION

Plaintiff asserts that removal based on federal officer jurisdiction was improper. Plaintiff contends that Silverado's assertion that it was acting at the direction of a federal officer has been "repeatedly rejected" by federal courts considering similar claims by assisted living facilities. (ECF No. 8 at 16). Plaintiff contends that "the directives that [Silverado] rel[ies] on are nothing more than general regulations and directives regarding the provision of medical services," which are insufficient to satisfy the requirements of the federal officer removal statute. (*Id.*).

Defendant Silverado contends that it properly removed this case based on federal officer jurisdiction because Silverado, "as a member of the nation's 'critical infrastructure,' was at all times acting at the specific direction and within the oversight of the Federal government." (ECF No. 10 at 9). Silverado contends that this Court should follow the decisions of district courts in Texas that are "illustrative of the fact that the actions Defendant took pursuant to federal directives in the midst of the pandemic are sufficient to satisfy the requirements of federal officer removal." (*Id.* at 31).

The federal officer removal statute permits removal of a state court action against an "officer (or any person acting under that officer) of the United States or of any agency

---

[2] The Court does not consider whether Plaintiff's claims would survive a motion to dismiss for lack of jurisdiction under the PREP Act or whether Silverado could succeed on a federal preemption defense.

thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). "To invoke § 1442(a)(1) removal, a defendant in a state court action 'must demonstrate that (a) it is a person within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a colorable federal defense.'" *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018) (quoting *Durham*, 445 F.3d at 1251).

"To demonstrate a causal nexus, a private person must show: (1) that the person was 'acting under' a federal officer in performing some 'act under color of federal office,' and (2) that such action is causally connected with the plaintiffs' claims." *County of San Mateo v. Chevron Corp.*, 960 F.3d 586, 598 (9th Cir. 2020), *vacated and remanded on other grounds*, *Chevron Corp. v. San Mateo County*, 2021 U.S. Dist. LEXIS 2621 (May 24, 2021). Section 1442 is "liberally construed" but "not limitless." *Fidelitad*, 904 F.3d at 1099. "A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.' And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 153 (2007).

In the Notice of Removal, Silverado asserts that the Centers for Disease Control and Prevention ("CDC") and the Centers for Medicare and Medicaid Services ("CMS") have imposed detailed directives to "health facilities as members of the nation's critical infrastructure" in response to the COVID-19 pandemic. (ECF No. 1 ¶ 63). Silverado asserts that the California Department of Public Health ("CDPH") is "supervising skilled nursing facilities with respect to all aspects of infection control and the pandemic response and ensuring strict compliance with the CMS directives." (*Id.*). Silverado describes and attaches to the Notice of Removal several memoranda and guidance documents issued between January and April 2020, some of which provide information to the general public (*see, e.g.*, CDC Health Updates), and some of which provide guidance to healthcare providers or nursing homes (*see, e.g.*, CMS Guidance for Infection Control and Prevention

of Coronavirus Disease 2019 (COVID-19) in Nursing Homes). (ECF Nos. 4-11–4-29). These documents support an inference that Silverado is subject to a high degree of federal regulation, which is insufficient to demonstrate that Silverado was acting pursuant to a federal officer's directions. *See Stirling v. Minasian*, 955 F.3d 795 (9th Cir. 2020) ("Extensive federal regulation alone is insufficient."). Courts in this circuit considering claims against assisted living facilities based on their actions or inactions during the COVID-19 pandemic have consistently rejected the argument that the facilities were acting pursuant to a federal officer's directions. *See, e.g.*, *Riggs v. Country Manor La Mesa Healthcare Ctr.*, No. 21-cv-331-CAB-DEB, 2021 U.S. Dist. LEXIS 98796, at *9-10 (S.D. Cal. May 25, 2021) (collecting cases). The Court concludes that Silverado has failed to meet its burden to establish that removal based on federal officer jurisdiction was proper.[3]

## VII. JURISDICTIONAL DISCOVERY

Defendant Silverado asserts that "if the Court determines that there is insufficient clarity of facts to decide whether federal jurisdiction lies in this Court based on application of the PREP Act, it should err on the side of caution and allow limited jurisdictional discovery before rendering a decision." (ECF No. 10 at 2). A district court has discretion to permit or deny jurisdictional discovery. *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). "Discovery may be appropriately granted when pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.* The Court has concluded that Silverado has failed to meet its burden to demonstrate that removal was proper based on the allegations in the Complaint. Silverado has not identified the facts it seeks to discover or demonstrated how such facts would change the Court's analysis. Silverado's request for jurisdictional discovery is denied.

///

---

[3] Because the Court has concluded that Silverado has failed to demonstrate that it acted pursuant to a federal officer's directions, the Court need not address the remaining requirements for removal under § 1442(a)(1).

**VIII. STAY**

Defendant Silverado requests that the Court "issue a temporary stay on remand pursuant to Fed. R. Civ. P. 62(a) to allow Defendant a right to appeal." ECF No. 10 at 2; *see* 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal" unless the action "was removed pursuant to section 1442 or 1443"). A stay is ultimately "an exercise of judicial discretion, and [t]he propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (alteration in original). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* Silverado has not demonstrated that the circumstances justify a stay in this case. The Court declines to issue a temporary stay on remand.

**IX. CONCLUSION**

IT IS HEREBY ORDERED that Plaintiff's Motion to Remand to State Court (ECF No. 8) is granted. This case is remanded to the San Diego County Superior Court, where it was originally filed as Case No. 37-2021-00023933-CU-MM-CTL.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss (ECF No. 5) is denied as moot.

Dated: November 2, 2021

Hon. William Q. Hayes
United States District Court